UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRETT WAGGONER, | Case No.: 2:21-cv-01312-APG-EJY |
| Plaintiff | **Order Granting in Part Motion to Dismiss** |
| v. | [ECF No. 13] |
| NYE COUNTY, CHRIS ARABIA, and LEO BLUNDO, | |
| Defendants | |

Plaintiff Brett Waggoner is the Director of Planning for defendant Nye County. ECF No. 1 at 3.  He sues Nye County, Nye County district attorney Chris Arabia, and Nye County Commissioner Leo Blundo, claiming they have taken various actions against him because he is a homosexual male.  He asserts claims for Title VII sex discrimination, hostile work environment, and retaliation against Nye County.  He asserts claims against all defendants for depriving him of equal protection under 42 U.S.C. § 1983, interference with current and prospective economic advantage, intentional infliction of emotional distress, and defamation.

Arabia and Blundo move to dismiss, arguing that Waggoner's § 1983 claim against them should be dismissed because Waggoner fails to allege facts showing that they acted with intent to discriminate against Waggoner based on his sexual orientation.  They also argue that Waggoner has not plausibly alleged interference with a prospective economic advantage because he is still the director of planning.  Arabia and Blundo contend that if Waggoner meant to allege a claim for interference with a current contractual relationship, he fails to plausibly allege that his employment was disrupted or how he was harmed.  They also suggest their conduct was privileged because they were addressing county business and issues of public concern.  Arabia and Blundo assert that there are no allegations of extreme or outrageous conduct or allegations of

severe emotional distress to support an intentional infliction of emotional distress claim.  Finally, they contend that the defamation claim fails because the only identified statements are privileged ethics complaints.

Waggoner responds that the defendants have inappropriately included information in their motion to dismiss that is not included in the complaint.  On the merits, Waggoner contends that he has adequately alleged each of his claims.

**I. BACKGROUND**

According to the complaint, Blundo and Arabia have "made numerous negative comments degrading [Waggoner's] sexuality." *Id.* at 3.  Waggoner alleges that when his ex-husband, Ron Boskovich, ran for Nye County Commissioner against Blundo, Blundo circulated the deed to Waggoner's home showing that Waggoner and Boskovich owned the home. *Id.* at 4.  Waggoner alleges Blundo did so to "point out the fact that they were gay." *Id.*  Waggoner asserts that Blundo attempted to use the fact that Waggoner and Boskovich were gay to turn Waggoner's fellow employees against him and to turn voters against Boskovich. *Id.*

According to the complaint, Blundo also complained to a district attorney that there was a nepotism problem because Waggoner's stepdaughter (Boskovich's daughter) was a deputy district attorney. *Id.* at 4-5.  That district attorney concluded that there was no merit to the nepotism allegation. *Id.* at 5.

Waggoner alleges that Blundo "consistently pestered" a local newspaper reporter to run a story about Waggoner and Boskovich's marriage and the alleged nepotism. *Id.*  The reporter told Boskovich she was going to run the story until Boskovich threatened a lawsuit. *Id.*

According to Waggoner, Blundo "pushed the nepotism issue" during the political campaign for County Commissioner and claimed that if Boskovich won, then Boskovich,

Boscovich's daughter, and Waggoner would control Pahrump and form a "Trifecta of Evil." *Id.* Arabia allegedly told Boskovich that Blundo offered to campaign for Arabia if Arabia would fire Boskovich and help get Waggoner terminated. *Id.*

The complaint also alleges that Blundo baselessly accused Waggoner's department of selective enforcement, wrongly accused Waggoner of violating an open meeting law, and requested Waggoner's supervisor place "unfounded negative information" in Waggoner's personnel file. *Id.* at 6. According to Waggoner, Blundo and Arabia have made several other "unfounded and fabricated accusations" against Waggoner. *Id.*

The complaint alleges that Arabia takes nine months to respond to requests from Waggoner's department when responses to those requests had taken approximately 30 days before Arabia took office. *Id.* The delays negatively impact Waggoner's ability to do his job. *Id.*

In April 2019, Waggoner complained to human resources that he was being discriminated against based on his sexual orientation. *Id.* He was told that no action could be taken against Blundo and Arabia as elected officials, but he was encouraged to file an ethics complaint, which he did. *Id.* at 6-7. The Nevada Commission on Ethics issued confidential letters of caution to Blundo and Arabia, advising them to ensure that there was separation between their official roles and matters affecting their private interests. *Id.* at 7-8. According to the complaint, after Waggoner filed his ethics complaint, Blundo and Arabia caused an ethics complaint to be filed against Waggoner falsely claiming that Waggoner did not tell his supervisor he was trying to obtain an interest in a brothel, that he owns an interest in a marijuana cultivation operation, and that he attempted to extort money from an investor by suggesting he could use his influence at the county to get her a license to operate a brothel. *Id.* at 8.

Based on these facts, Waggoner sues the defendants for various claims. Nye County filed an answer. ECF No. 9. Blundo and Arabia move to dismiss.

## II. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A. Section 1983 Equal Protection

Count four of the complaint alleges the defendants deprived Waggoner of his right to equal protection by discriminating, harassing, and retaliating against him because of his sexual orientation. ECF No. 1 at 13. Arabia and Blundo argue that Waggoner fails to allege facts showing that they acted with intent to discriminate against Waggoner based on his sexual orientation. Waggoner responds that he has adequately alleged that Arabia and Blundo made comments about his sexual orientation and were improperly motivated by discriminatory bias.

To state an equal protection claim under § 1983, Waggoner must allege that (1) the defendants "act[ed] under color of state law," (2) the defendants discriminated against Waggoner as a member of an identifiable class, and (3) "the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). An allegation of

discrimination based on sexual orientation adequately alleges the plaintiff is a member of an identifiable class for equal protection purposes. *Id.* at 1134-35.

### 1. Arabia

Waggoner has not adequately alleged an equal protection claim against Arabia. Many of the allegations are conclusory, such as stating that Arabia "targeted" Waggoner without stating facts about what that means and that Arabia "made numerous negative comments" about Waggoner's sexuality without identifying the factual content of these statements. Waggoner also alleges that Arabia erroneously accused Waggoner of nepotism and that responses from the district attorney's office have slowed down since Arabia took office. But he does not plausibly allege facts to support a reasonable inference that Arabia's actions were motivated by discriminatory intent based on Waggoner's sexuality. Finally, Waggoner alleges Arabia filed false ethics complaints against Waggoner, but he alleges the complaints were in retaliation for Waggoner's own complaints against Blundo and Arabia, not because of Waggoner's sexual orientation.

I therefore grant Arabia's motion to dismiss this claim. However, because it is not clear that amendment would be futile, I grant Waggoner leave to amend to add factual allegations to plausibly allege that Arabia acted under color of state law and intentionally discriminated against Waggoner based on sexual orientation, if facts exist to do so. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation omitted)).

/ / / /

/ / / /

5

B. Blundo

The allegations against Blundo suffer from similar defects of being conclusory. But there are several allegations specific to Blundo that are not made against Arabia, including that Blundo circulated the deed to Waggoner's house, urged a local reporter to run a story about Waggoner's marriage to Boskovich, tried to get Waggoner fired, made unsupported allegations at Board of County Commissioner meetings against Waggoner and his department, and tried to get unidentified negative information placed in Waggoner's personnel file. Most of these allegations are conclusory or do not plausibly allege a basis to infer a discriminatory intent. I therefore dismiss this claim to the extent it is based on anything other than circulating the deed and urging the reporter to run a story, with leave to amend if facts exist to do so.

But viewing all factual allegations and reasonable inferences in Waggoner's favor, Waggoner has plausibly alleged that Blundo acted with a discriminatory purpose based on Waggoner's sexuality with respect to circulating the deed and urging the reporter to run a story on Waggoner's marriage. Waggoner alleges Blundo circulated the deed directly to county employees and on social media, and urged a local reporter to run a story for the purpose of showing that Waggoner was married to another man. Because Blundo moves to dismiss this claim only on the question of whether the complaint plausibly alleged discriminatory intent, I deny the motion with respect to these two allegations for the § 1983 claim against Blundo.

**B. Interference With Current and Prospective Economic Advantage**

Count five of the complaint alleges Blundo and Arabia tried to get Waggoner fired and made his job more difficult. According to the complaint, Blundo and Arabia acted with the intent to interfere with Waggoner's job as director of planning, as well as with any other

positions he may hold in the future. Waggoner alleges that he was damaged as a result through loss of earnings, bonuses, job benefits, and expenses, as well as suffering emotional distress.

Blundo and Arabia argue that Waggoner is still the director of planning, so there is no prospective relationship with which they interfered. They contend that if he meant to allege a claim for interference with a current contractual relationship, he fails to plausibly allege that his employment was disrupted or how he was harmed. They also suggest their conduct was privileged because they were addressing county business and issues of public concern.

Waggoner responds that he pleaded this claim as one for interference with a prospective economic advantage because he is an at-will employee, so he has no current contractual right to enforce. Instead, he contends he has a prospective economic interest in expected continued employment with the county, and the defendants interfered with this interest through their various efforts to have him investigated and fired. He contends that he has adequately alleged the defendants abused any privilege because they fabricated allegations against him. Finally, Waggoner concedes that he has not suffered losses in earnings, bonuses, or job benefits because he is still employed. But he contends he has adequately alleged he suffered mental anguish.

To state a claim for intentional interference with prospective economic advantage, the plaintiff must allege: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993). This type of claim "seek[s] compensation for damage to business interests." *Stalk v. Mushkin*, 199 P.3d 838, 841 (Nev. 2009). It is a claim "for taking personal property and not . . . for injuries to a person." *Id.* at 842. Damages are "for

the pecuniary loss of the benefits of the prospective relationship." *Sunridge Builders, Inc. v. Old Blue, LLC*, Nos. 56335, 57316, 129 Nev. 1155, 2013 WL 485831, at *2 (Nev. Feb. 6, 2013).

Waggoner has not plausibly alleged a claim for intentional interference with prospective economic advantage because he concedes he remains the director of planning and has not lost the economic benefits of his employment. ECF No. at 17 at 14 (stating that "although Waggoner would agree that he has not suffered losses in earnings, bonuses, job benefits, etc. as set forth in paragraph 107 because at this point he has not been terminated, Plaintiff has and continues to suffer emotional distress . . . "). Waggoner cites no authority for the proposition that mental distress damages can support this type of claim, which is a claim for damage to business interests. I therefore dismiss this claim with prejudice because amendment would be futile.

**C. Intentional Infliction of Emotional Distress**

Count six of the complaint asserts a claim for intentional infliction of emotional distress based on the defendants making negative comments about Waggoner's sexuality, circulation of the deed, the unjustified accusation of nepotism, and false ethics complaints. Waggoner alleges that the defendants caused "mental anguish, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, recurring nightmares and depression, the extent of which is not fully known at this time . . . ." ECF No. 1 at 16-17.

Arabia and Blundo assert that there are no allegations of extreme or outrageous conduct or of severe emotional distress. Waggoner responds that the defendants' comments about his sexuality, their false accusations, and the circulation of the deed to his house constitute extreme and outrageous conduct. Additionally, he argues that he plausibly alleged severe emotional

distress by alleging he suffered anguish and embarrassment, and has nightmares, difficulty sleeping, tension, anxiety, and depression.

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). Extreme and outrageous conduct is "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified). I make the initial determination as to whether a reasonable jury could find conduct to be extreme and outrageous. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing Restatement (Second) of Torts § 46 cmts. h, j). The more extreme the outrage, the less evidence of physical injury or illness from the emotional distress is required. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see also Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010) (finding that insomnia, nightmares, general nervousness, and "a purely emotionally upsetting situation" are insufficient to support an IIED claim under Nevada law, and explaining that objectively verifiable evidence, like a need for "psychiatric assistance or medication," are necessary to meet the physical manifestation requirement).

Waggoner has plausibly alleged that the defendants engaged in extreme and outrageous conduct by falsely accusing him of using his position as director of planning to extort someone. *See Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) ("Whether the issuance of a press release which could be interpreted as stating that a police officer committed perjury is extreme and outrageous conduct is a question for the jury."). However, Waggoner fails to allege he

suffered severe emotional distress. Allegations of nightmares, anxiety, and self-reported depression with no allegations of treatment are insufficient. *See Miller*, 970 P.2d at 577 (stating that the plaintiff's testimony that he was depressed for some time but did not seek any medical or psychiatric assistance was insufficient to support an IIED claim).

I therefore dismiss Waggoner's IIED claim. However, because it is not clear that amendment would be futile, I grant Waggoner leave to amend this claim, if facts exist to do so. In amending, Waggoner may also add factual allegations to support his assertion that the defendants engaged in extreme and outrageous conduct if he chooses to do so.

### D.  Defamation

Count seven of the complaint alleges Arabia and Blundo made untrue and unprivileged accusations in the ethics complaints that falsely accused Waggoner of not properly disclosing he was trying to obtain an interest in a brothel, owning an interest in a marijuana cultivation operation, and extorting money by telling an investor he could use his influence as director of planning to get her a license to operate a brothel.

Arabia and Blundo contend that the defamation claim fails because the only identified statements are privileged ethics complaints. Waggoner responds that the relevant statements are the false statements in the ethics complaints and Blundo's false accusation of nepotism. Waggoner contends that the defendants did not identify a privilege and made no showing of privilege. Finally, he contends that he plausibly alleged that the defendants acted with malice sufficient to overcome a privilege.

I grant the defendants' motion to the extent the defamation claim is meant to cover more than the statements in the ethics complaints. Although Waggoner contends in his opposition that this claim includes Blundo's false accusation of nepotism, the complaint does not give fair notice

that this statement is part of the defamation claim.  And to the extent Waggoner intended to include any other alleged statements, they are not identified.  I therefore grant the defendants' motion to dismiss the defamation claim to the extent it is based on anything other than the alleged false ethics complaints. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Under Rule 8(a), the plaintiff must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (quotation omitted)).  Because it is not clear that amendment would be futile, I grant Waggoner leave to amend this claim to adequately identify what statements he is pursuing in relation to his defamation claim.

As to the alleged false ethics complaints, the defendants' only argument for dismissal is that these statements were privileged.  "[P]rivileges are defenses to a defamation claim and, therefore, the defendant has the initial burden of properly alleging the privilege and then of proving the allegations at trial." *Lubin v. Kunin*, 17 P.3d 422, 427 (Nev. 2001).  The defendants' motion does not identify what privilege they are invoking, cite any law, or make any argument in support.  Instead, the entirety of the defendants' argument is an unexplained parenthetical that the ethics complaints are privileged. *See* ECF No. 13 at 12 ("With the exception [of the] ethics complaints (which are privileged), Waggoner does not specify what the defendants purportedly said or to whom they said it.").  The defendants' motion therefore fails to adequately identify a basis to dismiss the defamation claim based on the ethics complaints. *See* LR 7-2(d) ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion.").  Consequently, I deny this portion of the motion.

### III. CONCLUSION

I THEREFORE ORDER that defendants Chris Arabia and Leo Blundo's motion to dismiss **(ECF No. 13) is GRANTED in part** as set forth in this order.

11

I FURTHER ORDER that plaintiff Brett Waggoner may file an amended complaint to correct the identified deficiencies where leave to amend was granted above, if facts exist to do so. If plaintiff Brett Waggoner does not file an amended complaint by **May 27, 2022**, then the case will proceed on the claims that survived dismissal in this order.

DATED this 30th day of April, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE