UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRETT WAGGONER,<br><br>　　　Plaintiff<br><br>v.<br><br>NYE COUNTY, CHRIS ARABIA, and LEO BLUNDO,<br><br>　　　Defendants | Case No.: 2:21-cv-01312-APG-EJY<br><br>**Order Granting Defendant Nye County's Motion for Summary Judgment**<br><br>[ECF No. 43] |

　　　Plaintiff Brett Waggoner is the current Director of Planning for Nye County. He sues defendants Nye County, former Nye County Commissioner Leo Blundo, and former Nye County District Attorney Chris Arabia. He contends that Blundo and Arabia targeted him for discriminatory treatment and retaliation based on his sexual orientation.

　　　Waggoner sues Nye County for sex discrimination, hostile work environment, and retaliation in violation of Title VII; an equal protection violation under 42 U.S.C. § 1983; intentional infliction of emotional distress; and defamation. Nye County moves for summary judgment on all claims against it.[1] ECF No. 43. In response, Waggoner agrees to dismiss his claims against Nye County for equal protection, intentional infliction of emotional distress, and defamation. ECF No. 47 at 3 n.1. But he opposes summary judgment on his Title VII claims.

　　　The parties are familiar with the facts, so I recite them here only as necessary to resolve the motion. I grant Nye County's motion on all claims.

/ / / /

/ / / /

---

[1] I address Blundo and Arabia's motion for summary judgment in a separate order.

# I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Discrimination

Nye County argues that Waggoner's discrimination claim fails because he cannot show he suffered an adverse employment action when he is still in his job and his compensation has not changed. It contends that much of what Waggoner complains about happened before Blundo and Arabia took office, so that cannot be attributed to Nye County, and even after they took office, he complains about nothing more than Blundo being harsh and aggressive. Nye County also contends that Waggoner has not identified a similarly situated employee who was treated differently.

Waggoner responds that he suffered an adverse employment action because Blundo made Waggoner's work harder by targeting him at Board meetings with baseless accusations, attempting to get his supervisor to place negative information in his employment file, and making unfounded accusations against him. He also contends that Arabia tried to get him terminated. Waggoner argues that even though Blundo and Arabia's efforts to get him fired or have negative information placed in his employment file failed, the terms and conditions of his employment were affected because he was humiliated. He also contends that while Nye County argues that Blundo treated other employees harshly, it has not presented evidence of specific instances to support that theory. He also argues that even if Blundo was harsh with other employees, Blundo was even more aggressive towards him.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). Discriminating against an employee because he is homosexual is discrimination "because of" that employee's sex. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1741 (2020).

Waggoner's disparate treatment discrimination claim is subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088-89 (9th Cir. 2008). Under that analysis, Waggoner "must first establish a prima facie case of discrimination." *Id.* at 1089. "If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action." *Id.* If the employer does so, then "the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotation omitted).

To establish a prima facie case of disparate treatment discrimination, Waggoner must show "that (1) [he] belongs to a protected class; (2) [he] was qualified for [his] position; (3) [he] was subject to an adverse employment action; and (4) similarly situated individuals outside [his] protected class were treated more favorably."[2] *Id.* Waggoner's burden in establishing a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (quotation omitted).

For a disparate treatment claim, an adverse employment action "is one that materially affects the compensation, terms, conditions, or privileges of employment." *Id.* (simplified). Aside from the obvious examples, such as termination, other actions like "assigning more, or more burdensome, work responsibilities" may constitute an adverse employment action. *Id.* However, actions that do not result in changes to the conditions of employment, such as an investigation that results in no action against the investigated employee, are not adverse employment actions in the disparate treatment context. *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018).

As an initial matter, Waggoner does not specifically address Nye County's argument that it cannot be liable under Title VII for Blundo and Arabia's conduct before they were elected because they were not yet Nye County officials, or after they were elected because Nye County

---

[2] Nye County does not dispute that Waggoner belongs to a protected class and was qualified for and satisfactorily performing his job.

has no ability to control elected officials' conduct.[3] Waggoner instead argues that Nye County is at fault for its employees not protecting him from the elected officials after they took office.

I need not address those arguments because even viewing the facts in the light most favorable to Waggoner, he has not shown that Nye County took an adverse employment action against him for purposes of his disparate treatment claim. Waggoner remains in his job and has suffered no change in compensation. *See* ECF No. 43-1 at 14-16. There is no evidence he experienced a change in benefits, job station, or job duties. No negative reviews were placed in his employment file. ECF No. 43-1 at 7, 15. To the extent any investigations were conducted, none resulted in discipline against Waggoner. ECF No. 47-2 at 14-19, 24-25. Indeed, county manager Timothy Sutton rebuffed Blundo's attempts to make Sutton discipline Waggoner. ECF No. 47-1 at 24-26. And although Waggoner alleged in the amended complaint that Arabia made his job more difficult by delaying responses on items from Waggoner's office, Nye County has presented evidence that was not the case, and Waggoner has presented no evidence or argument to the contrary. *See* ECF Nos. 33 at 8; 43-3 at 5-6, 9-12; 43-4 through 43-9; 43-15 at 4; 47.

At bottom, Waggoner's claim is based on allegations that Blundo subjected him to harsh and unfounded criticism and tried to get him disciplined or fired. But Blundo's attempts failed and none of his actions resulted in changes to the terms and conditions of Waggoner's employment. I therefore grant summary judgment in Nye County's favor on this claim.

**B. Hostile Work Environment**

Nye County contends that the hostile work environment claim fails because Waggoner has not presented evidence that he was subjected to verbal or physical conduct based on his

---

[3] *See Van Domelen v. Menominee Cnty.*, 935 F. Supp. 918, 922 (W.D. Mich. 1996) (concluding that a county could not be liable under Title VII for an elected official's conduct).

sexual orientation, given that any conduct that even hinted at his sexual orientation occurred before Blundo and Arabia took office. Additionally, it argues that although Blundo was undeniably harsh and aggressive with several Nye County employees after he took office, none of his comments was based on sexual orientation. Alternatively, Nye County contends that the conduct about which Waggoner complains was not sufficiently severe or pervasive to alter his employment.

Waggoner responds that he was subjected to harassing conduct by Blundo at Board of County Commissioner meetings and by Arabia trying to get him fired. He asserts that this was based on his sexual orientation because during the campaign before Blundo was elected, Blundo sent out a real estate deed showing that Waggoner was married to another man and made comments about the two still being married even though they were divorced. Waggoner argues that the County's contention that Blundo was pointing out potential nepotism, not a homosexual relationship, fails because Blundo did not target other familial relationships among County employees. He contends the harassment was sufficiently severe and pervasive because Blundo and Arabia were interfering with his work performance and trying to get him fired. Finally, he contends Nye County is liable for the harassment because it took no action to remedy the situation after Waggoner complained to human resources. He asserts that an employer can be liable for harassment by non-employees, so for this claim, it does not matter if Blundo and Arabia, as elected officials, are not considered Nye County employees.

Title VII prohibits "the creation of a hostile work environment, which violates Title VII's guarantee of the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (quotation omitted). To show a hostile work environment claim based on sexual orientation, which is a

form of sex discrimination, Waggoner must demonstrate: "(1) that he was subjected to verbal or physical conduct of a . . . [sexual or sexual orientation] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 686 (9th Cir. 2017) (quotation omitted). Whether an environment is "so hostile as to violate Title VII" is evaluated "in light of all the circumstances." *McGinest*, 360 F.3d at 1112-13 (quotation omitted). In determining whether a work environment is objectively hostile, "the factors to be considered include the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 1113 (quotation omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted). "Title VII is not a general civility code." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) (quotation omitted). Consequently, "[s]imply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." *McGinest*, 360 F.3d at 1113. However, it suffices "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* (quotation omitted).

   Even viewing the facts in the light most favorable to Waggoner, he has not raised a genuine dispute about a hostile work environment. Waggoner complains about Blundo's actions before Blundo took office, such as circulating the deed, trying to pressure a reporter to run a story about Waggoner's former marriage, and referring to Waggoner and his ex-husband as being married to each other or as partners. An "employer can create a hostile work environment by failing to take immediate and corrective action in response to a coworker's or third party's

sexual harassment . . . the employer knew or should have known about." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021). But the harassment about which Waggoner complains did not occur in the workplace, and Waggoner does not suggest how Nye County knew about it, how it could have prevented a political candidate from making these statements, or what action it could have taken to address it. This is not like *Fried*, where the employer could have prevented the employee from having to further interact with the harasser, who was a customer of the business. *See id.* at 649-50.

As for Blundo's conduct after taking office, Waggoner has presented no evidence that Blundo's conduct or statements were related to sex or sexual orientation, aside from a few comments Blundo made during campaign debates in March and April 2022 and a few social media posts. In the first debate and in social media posts, Blundo referred to Waggoner and his ex-husband as "husbands" even though they had been divorced for many years. ECF Nos. 47-1 at 14-15; 47-4 at 2. In the second, he referred to them as spouses, husbands, or "ex-husband, is it now your boyfriend." *Id.* These few comments outside the workplace were not sufficiently severe or pervasive to create a hostile work environment as a matter of law. *See, e.g.*, *Fried*, 18 F.4th at 648-49 (holding that a few comments that a male manicurist should consider finding another job or wear wigs was insufficient, and collecting other cases with more severe facts that also did not find a hostile work environment). I therefore grant Nye County's motion on this claim.

**C. Retaliation**

Nye County argues that the retaliation claim fails because Waggoner cannot show that Blundo and Arabia were aware of Waggoner's complaints to human resources, so they could not

have retaliated against him for that protected activity. Additionally, it argues that Waggoner has not identified what conduct was retaliatory based on that complaint.

Waggoner responds that after he complained to human resources, someone filed an ethics complaint against him (which he assumes was filed by Blundo or Arabia), and causation can be inferred based on the temporal proximity between his complaint and the ethics complaint filed against him.

Waggoner's retaliation claim is subject to the *McDonnell Douglas* burden-shifting analysis. *Davis*, 520 F.3d at 1088-89. To make out a prima facie case of retaliation under Title VII, Waggoner must show that: (1) he engaged in a protected activity, (2) Nye County subjected him to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003) (quotation omitted). If Waggoner establishes a prima facie retaliation claim, the burden shifts to Nye County to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Nye County does so, then Waggoner "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.* (quotation omitted).

Viewing the facts in the light most favorable to Waggoner, a reasonable jury could find that Waggoner engaged in protected activity by complaining to Nye County human resources director Danelle Shamrell that Blundo and Arabia were discriminating against him based on his sexual orientation. Although Shamrell denied that Waggoner's complaints mentioned sexual orientation, Waggoner states that he did. *See* ECF Nos. 43-2 at 10 (Shamrell testifying that Waggoner did not state he was being harassed because of his sexual orientation); 47-1 at 5 (Waggoner stating that he complained to Shamrell that Blundo and Arabia were harassing him based on his sexual orientation).

1    The only adverse action Waggoner identifies is an ethics complaint that was filed against him. But he cannot show a causal link between his complaints to Shamrell and the ethics complaint. Waggoner does not know who filed the ethics complaint because the Nevada Commission on Ethics would not disclose that information. ECF No. 47-1 at 37-43. And because he does not know who filed it, he has no evidence that the filer knew about his complaints to Shamrell. He asserts that there is circumstantial evidence to support the conclusion that Blundo and Arabia filed it or caused it to be filed by someone else. But even assuming this is so, Waggoner has presented no evidence that Blundo or Arabia knew about his complaints to Shamrell. Shamrell states that she did not talk to Blundo or Arabia about Waggoner's complaints and Blundo and Arabia testified that they did not know about the complaints. ECF Nos. 43-2 at 7-8; 45 at 47; 46 at 53-54. Waggoner presents no evidence to the contrary (and indeed appears to argue in relation to his other claims that this was a failing on Nye County's part because it did nothing to protect him from his alleged harassers). Blundo and Arabia could not have retaliated against Waggoner for filing a complaint that they did not know about. *Maner*, 9 F.4th at 1127 ("To establish a causal connection between opposition to employer conduct and a retaliatory action, the plaintiff must show the defendant was aware that the plaintiff had engaged in protected activity." (quotation omitted)).

    Additionally, Waggoner's reliance solely on the temporal proximity between his complaint to Shamrell and the filing of the ethics complaint to show causation is misplaced. Waggoner states that he complained to Shamrell in April 2019, although it appears he must have complained sooner because he also states that he filed an ethics complaint in March 2019 against Arabia after Shamrell encouraged him to file ethics complaints against Blundo and Arabia. ECF No. 47-1 at 5-6. He states he complained many other times but gives no dates for those

complaints. *Id.* The ethics complaint against him was filed on February 28, 2020.[4] *Id.* at 7. Causation "may be established based on the timing of the relevant actions . . . when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). However, the approximately ten months between his protected activity and the alleged adverse action is too remote to alone support an inference of causation. *See Manatt*, 339 F.3d at 802 (holding that an inference of causation based on temporal proximity was "not possible in this case because approximately nine months lapsed between the date of Manatt's complaint and the Bank's alleged adverse decisions"). Waggoner presents no evidence or argument beyond temporal proximity to support causation. I therefore grant Nye County's motion on this claim.

**II. CONCLUSION**

I THEREFORE ORDER that defendant Nye County's motion for summary judgment **(ECF No. 43) is GRANTED**.

DATED this 8th day of August, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[4] Waggoner filed a complaint with the Equal Employment Opportunity Commission in October 27, 2020. ECF No. 33 at 2-3. Although that would qualify as protected activity, Waggoner filed that after the ethics complaint had already been made against him, and he does not argue or present evidence that he was otherwise retaliated against for filing it.