UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRETT WAGGONER,<br><br>    Plaintiff<br><br>v.<br><br>NYE COUNTY, CHRIS ARABIA, and LEO BLUNDO,<br><br>    Defendants | Case No.: 2:21-cv-01312-APG-EJY<br><br>**Order Granting in Part Defendants Blundo and Arabia's Motion for Summary Judgment**<br><br>[ECF No. 44] |

Plaintiff Brett Waggoner is the current Director of Planning for Nye County. He sues defendants Nye County, former Nye County Commissioner Leo Blundo, and former Nye County District Attorney Chris Arabia. He contends that Blundo and Arabia targeted him for discriminatory treatment and retaliation based on his sexual orientation.

Waggoner sues Blundo and Arabia for an equal protection violation under 42 U.S.C. § 1983, intentional infliction of emotional distress, and defamation. Blundo and Arabia move for summary judgment on all claims against them.[1] ECF No. 44. In response, Waggoner agrees to dismiss his equal protection claim. ECF No. 47 at 3 n.1. But he opposes summary judgment on his state law tort claims.

The parties are familiar with the facts, so I recite them here only as necessary to resolve the motion. I grant the motion in part.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] I address Nye County's motion for summary judgment in a separate order.

56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. County of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A.  Intentional Infliction of Emotional Distress (IIED)**

Blundo and Arabia argue that Waggoner cannot show they engaged in extreme or outrageous conduct, and he did not suffer severe emotional distress as a result.  They contend that mailing a factually accurate deed showing that Waggoner and Waggoner's ex-husband owned property as spouses is not extreme and outrageous.  They also contend that Blundo pointing out that Waggoner and his ex-husband still lived in the same house and had ties that may raise nepotism concerns in the County is not extreme and outrageous.  And Blundo contends that it is not extreme and outrageous for him to provide his opinions on Waggoner's work performance.  Alternatively, Blundo and Arabia contend that Waggoner cannot show objectively verifiable facts demonstrating that he suffered severe emotional distress.

Waggoner responds that Blundo engaged in extreme and outrageous conduct by circulating a deed to show Waggoner was gay, referring to Waggoner and his ex-husband as husbands or partners even though they were divorced, making hostile and unsubstantiated claims against Waggoner at Nye County Board of Commissioners meetings, causing an ethics complaint to be filed against Waggoner based on false allegations, and putting those false allegations in campaign materials. Waggoner contends that Arabia tried to get Waggoner fired based on false allegations and filed or caused to be filed an ethics complaint based on false allegations. Finally, Waggoner contends that he suffered severe emotional distress, as shown by him seeking treatment.

The elements of IIED are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress," and (3) causation. *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc) (quotation omitted). Outrageous conduct is behavior that goes "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009). "Liability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Abrams v. Sanson*, 458

P.3d 1062, 1070 (Nev. 2020) (stating that the "use of a vitriolic tone" is not extreme and outrageous).

The resulting emotional distress "must be so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Evidence that the plaintiff received medical treatment or suffered physical manifestations of emotional distress will suffice to show severe emotional distress. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) (per curiam) (finding a plaintiff had sufficiently alleged severe emotional distress when he "alleged that he [had] been diagnosed as 'situationally depressed,' and [was] receiving psychiatric treatment and taking medication"). But absent other indicia of emotional distress, feelings of inferiority, headaches, irritability, and weight loss are insufficient to amount to severe emotional distress. *Alam*, 819 F. Supp. at 911.

Courts evaluate IIED claims "on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress." *Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1201 (D. Nev. 2009). As with the question of whether conduct is extreme and outrageous, the court determines "whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement (Second) of Torts § 46 cmt. j (1965).

Circulating an accurate copy of a deed or referring to persons who are no longer married as spouses are petty annoyances that do not constitute extreme and outrageous conduct as a matter of law. Likewise, Blundo's alleged harsh critiques of Waggoner's job performance are not extreme and outrageous. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991) (holding, under California law, that a supervisor screaming while criticizing an employee and threatening to throw her out of the department was insufficient).

However, as I noted in a prior order, a reasonable jury could find that falsely accusing Waggoner of using his position as Director of Planning to extort someone is extreme and outrageous. ECF No. 30 at 9 (citing *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (per curiam) ("Whether the issuance of a press release which could be interpreted as stating that a police officer committed perjury is extreme and outrageous conduct is a question for the jury.")). Waggoner has presented evidence that Arabia aired false allegations that Waggoner was attempting to extort money out of an investor by promising he could use his influence as the Director of Planning to guarantee a license to operate a brothel or marijuana dispensary. *See* ECF Nos. 45 at 135; 46 at 71, 75, 77-78, 81, 87, 136; 47-1 at 5; 47-4 at 5.  Waggoner has also presented evidence that Blundo published these false accusations in campaign materials. *See* ECF Nos. 47-1 at 7, 45; 47-2 at 59-60.

An unidentified person (Waggoner assumes it was Blundo or Arabia) filed an ethics complaint based on the same allegations. ECF No. 47-1 at 37-43.  For the first time in their reply, Blundo and Arabia contend that the ethics complaint is protected by the litigation privilege. ECF No. 48 at 9.  I decline to consider this argument raised for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Although Waggoner's evidence of severe emotional distress is weak, a jury will have to resolve the issue.  Waggoner sought professional help at Next Chapter Therapy. ECF Nos. 43-11 at 4-39; 47-1 at 7-8.  That is sufficient objective evidence to survive summary judgment.  I therefore deny Blundo and Arabia's motion on this claim with respect to the false accusations of corruption, but grant it with respect to the deed and harsh criticisms of Waggoner's work performance.

### B. Defamation

Blundo and Arabia argue the defamation claim fails because the deed was a true and accurate copy of the deed obtained from the County Assessor's Office, and Blundo's accompanying email contained no inflammatory comments. They also argue Blundo's campaign statements and materials referring to Waggoner and his ex-husband as husbands or partners is not defamatory because the gist of Blundo's statements was true and related to possible nepotism. Additionally, they contend that they did not know that Waggoner was divorced at the time they made their statements. As for statements made during Board meetings, Blundo contends that Waggoner has failed to identify what statements he made that allegedly defamed Waggoner. Alternatively, Blundo and Arabia contend that they have a First Amendment right to critique Waggoner's job performance. Finally, Arabia contends that Waggoner was unable to identify at his deposition what statements Arabia made that allegedly were defamatory.

Waggoner responds that Blundo and Arabia caused an ethics complaint to be filed against him that contained false allegations. Waggoner contends Blundo also published the false allegations in campaign materials and Arabia used the false allegations to try to get Waggoner fired.[2] Waggoner contends these publications were made with malice and the allegation that he tried to extort a member of the public is defamation per se. In a footnote, he contends that the statements are not privileged because Blundo and Arabia published the statements with malice in fact without believing in the statements' probable truth. ECF No. 47 at 29 n.8.

---

[2] Waggoner also argues that it is "presumed that both Arabia and Blundo published these statements multiple times verbally to various individuals." ECF No. 47 at 29. Discovery is closed and Waggoner must come forward with evidence at this stage of the proceedings. Unsupported assumptions are not evidence.

6

To establish a defamation claim, Waggoner must prove "(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002) (simplified).

### 1. The Deed

Blundo contends that the deed he emailed is an accurate copy of the deed to Waggoner's property, and thus is not false. Waggoner does not respond to this argument. Thus, he has not presented evidence raising a genuine dispute that Blundo made a false statement in circulating the deed. I therefore grant Blundo's motion for summary judgment on this aspect of the defamation claim. *See id.* at 88 (stating that a statement is not defamatory "if it is absolutely true, or substantially true").

### 2. Reference to Husbands or Partners

Blundo argues that the gist of his references to Waggoner and Waggoner's ex-husband as husbands or partners was true because he was pointing out the possible ethics problems of them both working for the County and living in the same household regardless of whether they were married. He thus contends the "gist" of his statements were true. Blundo also asserts that there is no evidence that he knew Waggoner was divorced, so he did not know the statements were false. Waggoner does not respond to this argument. He consequently has not presented evidence or argument raising a genuine dispute that the gist of the statements were untrue or defamatory. I therefore grant Blundo's motion for summary judgment on this aspect of the defamation claim. *Rosen v. Tarkanian*, 453 P.3d 1220, 1224 (Nev. 2019) (en banc) (stating that "in a defamation action, it is not the literal truth of each word or detail used in a statement which

determines whether or not it is defamatory; rather, the determinative question is whether the gist or sting of the statement is true or false" (quotation omitted)).

### 3. Statements at Board Meetings

Blundo argues that Waggoner has not identified what statements Blundo made at Board meetings, so he is unable to identify which statements Waggoner contends are defamatory. But he argues that to the extent he critiqued Waggoner's job performance, he has a First Amendment right to do so. Waggoner does not respond to this argument. He consequently has not presented evidence or argument raising a genuine dispute as to these statements forming the basis of a defamation claim. I therefore grant Blundo's motion for summary judgment on this aspect of the defamation claim. *See, e.g.*, *Lubin v. Kunin*, 17 P.3d 422, 425-26 (Nev. 2001) (per curiam) (stating that to determine whether a statement is capable of a defamatory construction, the words and context must be examined).

### 4. Statements by Arabia

Arabia argues that when asked at deposition what defamatory statements Arabia made, Waggoner could not identify any. Arabia thus contends that summary judgment in his favor is warranted. Waggoner does not specifically respond to this argument. But he argues with respect to both Blundo and Arabia that they filed an ethics complaint against him containing false allegations.

The question at the deposition to which Arabia points was not for Waggoner to identify any defamatory statement. Rather, the question was for Waggoner to identify what comments Arabia made about Waggoner's ex-husband's sexuality. ECF No. 45 at 123-24. The deposition questions and answers do not conclusively establish that Waggoner cannot show Arabia made defamatory comments about Waggoner.

### 5. Ethics Complaint

Blundo and Arabia do not address in their motion the statements in the ethics complaint, even though these statements were alleged as part of the defamation claim in the amended complaint and discussed during discovery. *See, e.g.*, ECF Nos. 33 at 10, 19-20; 45 at 49-66.  The defendants therefore have not met their initial burden under Rule 56 showing they are entitled to judgment as a matter of law on the defamation claim with respect to those statements, which, as discussed above, Blundo and Arabia aired in other contexts.[3]

## II. CONCLUSION

I THEREFORE ORDER that defendants Leo Blundo and Chris Arabia's motion for summary judgment **(ECF No. 44) is GRANTED in part** as set forth in this order.

DATED this 8th day of August, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[3] As with the intentional infliction of emotional distress claim, Blundo and Arabia raise the absolute litigation privilege in relation to the ethics complaint for the first time in their reply with respect to the defamation claim. ECF No. 48 at 11-17.  I decline to consider this argument raised for the first time in reply. *Zamani*, 491 F.3d at 997.

9